Carol Lynn Finklehoffe. CA Bar No. 220309
LIPCON MARGULIES ALSINA & WINKLEMAN
One Biscayne Tower, Suite 1776
Miami, FL 33131
Tel: 305-373-3016
Fax: 305-373-6204
Email: cfinklehoffe@lipcon.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE BOULAIS DALPHOND and PIERRE DUVAL, individually, | CASE NO.: |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| PRINCESS CRUISE LINES, LTD., a corporation for profit, | |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, DIANE BOULAIS DALPHOND and PIERRE DUVAL, bring this action against Defendant PRINCESS CRUISE LINES, LTD., a for profit corporation, for personal injuries sustained. Plaintiffs, DIANE BOULAIS DALPHOND, and PIERRE DUVAL seeks damages and demands a jury trial on all issues so triable against Defendant PRINCESS CRUISE LINES, LTD., and for good cause alleges:

## THE PARTIES AND JURISDICTION

1.     Plaintiff, DIANE BOULAIS DALPHOND, is sui juris, is a resident of

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

Quebec and a citizen of Canada.

2.      Plaintiff, PIERRE DUVAL, is sui juris, is a resident of Quebec and a citizen of the Canada.

3.      At all times material, Defendant PRINCESS CRUISE LINES, LTD., ("PRINCESS") is incorporated in Bermuda, with its worldwide headquarters, principal address and principal place of business located in the County of Los Angeles, California.

4.      The matter in controversy exceeds the required amount, exclusive of interest and costs.

5.      This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333, because Defendant PRINCESS unilaterally inserts a forum selection clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this federal district and division,* as opposed to any other place in the world.

6.      Defendant PRINCESS, at all times material hereto, personally or through an agent:

  a.      Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

  b.      Was engaged in substantial activity within this state;

  c.      Operated vessels in the waters of this state;

  d.      Purposefully availed themselves of the benefits of conducting activities in California by purposefully directing their activities toward the state, thereby obtaining the benefits and protections of the state's laws;

  e.      The acts of the Defendant PRINCESS set out in this Complaint occurred in whole or in part in this state and/or county;

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

2

f.      The cruise line ticket for the Plaintiffs requires that suit be brought in this Court against the named Defendant PRINCESS in this action.

7.      At all times material, Defendant PRINCESS was and is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports throughout the world including, Los Angeles, California, San Francisco, California, and San Diego, California.

8.      At all times material, Defendant PRINCESS derived substantial revenue from cruises originating and terminating in various ports throughout the world including, Los Angeles, California, San Francisco, California, and San Diego, California.

9.      At all times material, Defendant PRINCESS operated, managed, maintained, supervised, chartered, and/or controlled a large commercial vessel named *Grand Princess* ("the subject vessel").

10.     At all times material, Defendant PRINCESS transported fare-paying passengers, including the Plaintiffs, on cruises aboard its vessel *Grand Princess*.

11.     This action is an action under general maritime law and the laws of California, as applicable.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12.     This lawsuit involves Defendant (a) knowing and intentional decision to proceed with a 16-day cruise on February 21, 2020, knowing at least one of its passengers from the prior voyage had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers, including the Plaintiffs, at any time prior to boarding and/or while they were already onboard that there were passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) knowing and intentional decision to wait one day to order passengers, including the Plaintiffs, to isolate in

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

their staterooms after being informed that the passenger who presented to the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19.   In so doing, Defendant subjected over 2,000 passengers, including the Plaintiffs, to the highly contagious coronavirus, and exposing them to and placing them at actual risk of immediate physical injury and death.

13.   As a result of the Defendant's negligence, both Plaintiffs DIANE BOULAIS DALPHOND and PIERRE DUVAL contracted COVID-19 while aboard the *Grand Princess*.   Plaintiffs suffered actual physical injuries, experienced the symptoms of COVID-19, and required significant medical care.   Both Plaintiffs DIANE BOULAIS DALPHOND and PIERRE DUVAL feared for their own lives as well as the lives of each other.

14.   On February 21, 2020, Plaintiffs DIANE BOULAIS DALPHOND and PIERRE DUVAL boarded the *Grand Princess.*   On March 9, 2020 they were disembarked from the vessel and flown to a military base where they were to be quarantined.

15.   By the time they arrived at the military based on the morning of March 10, 2020, Plaintiff DIANE BOULAIS DALPHOND was already experiencing symptoms of COVID-19.     On March 12, 2020 she was tested and confirmed to have COVID-19. She was taken to a local hospital for evaluation and returned to the military base where she remained until March 31, 2020.   During this time she experienced various symptoms of COVID-19, including but not limited to dry couch, shortness of breath, loss of smell, loss of taste and hair loss.   A subsequent examination upon her return home confirmed a finding of permanent damage to her lungs as a result of contracting COVID-19.   At present Plaintiff DIANE BOULAIS DALPHOND continues to suffer from the effects of having COVID-19.

16.   The Plaintiff PIERRE DUVAL began experiencing symptom of

4

COVID-19 on or about March 14, 2020, including but not limited to severe fatigue. On March 19, 2020 he was tested and confirmed to have COVID-19. His condition continued to deteriorate and on March 23, 2020 he hospitalized for 10 days, of which 3 where spent in the ICU. At present Plaintiff PIERRE DUVAL continues to suffer from the effects of having COVID-19.

### Factual Allegations Surrounding the Cruise Industry and the Coronavirus

17.     There has been a worldwide outbreak of a new virus, the coronavirus, also known as COVID-19. The virus originated in China, and quickly spread throughout Asia, Europe, and North America.

18.     The dangerous conditions associated with COVID-19 include its manifestations – severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock and/or multi-organ failure[1] – and/or its symptoms – fever, dry cough, and/or shortness of breath[2] – as well as the high fatality rate associated with contracting the virus.[3] The dangerous conditions associated with COVID-19 also include its extreme contagiousness. For example, a person with COVID-19 infects, on average, another 2.5 people, and COVID-19 is therefore more contagious than

---

[1] See Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order*, https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

[2] See Mayo Clinic, *Symptoms and Causes*, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last accessed April 6, 2020); *see also* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

[3] See Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (identifying a 3.6% global fatality rate); Journal of the American Medical Association, *Case-Fatality Rate and Characteristics of Patients Dying in relation to COVID-19 in Italy*, https://jamanetwork.com/journals/jama/fullarticle/2763667 (identifying a 7.2% and 2.3% fatality rate in Italy and China, respectively).

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Ebola or Influenza.[4]

19.    There have been over 103 million cases worldwide and over 2.2 million deaths as a result of the coronavirus.[5] Those fatalities have largely been amongst the elderly population, and those with underling medical complications.

20.    Outlined below is a timeline of events relevant to this lawsuit against Defendant. This timeline supports Defendant having actual knowledge of the dangerous conditions and/or explosive contagiousness associated with COVID-19 at the time the Plaintiffs contracted COVID-19:

a.    <u>December 31, 2019</u> – The local government in Wuhan, China, confirmed with the World Health Organization (hereinafter "WHO") that local health authorities in Wuhan were treating an influx of dozens of patients with what appeared to be novel cases of pneumonia with an unknown cause.

b.    <u>January 5-7, 2020</u> – China announced that the novel pneumonia cases in Wuhan were not caused by severe acute respiratory syndrome (hereinafter "SARS") or middle-east respiratory syndrome (hereinafter "MERS") – but COVID-19 – which belongs to the highly-contagious family of coronaviruses, including SARS and MERS.

c.    <u>January 11, 2020</u> – The Wuhan Municipal Health Commission announced the first death caused by COVID-19.

d.    <u>January 20, 2020</u> – A situation report published by the WHO confirmed COVID-19 cases outside of mainland China in Thailand, Japan and South Korea, which the WHO believed to have been exported from Wuhan, China. The situation report also identified 282 positive COVID-19 diagnoses worldwide with 278 of those positive cases within China.

e.    <u>January 23, 2020</u> – Chinese authorities take the <u>unprecedented</u> measure

---

[4] Popular Science, *COVID-19 Contagiousness*, https://www.popsci.com/story/health/how-diseases-spread/.

[5] *See*, https://www.worldometers.info/coronavirus/?utm_campaign=homeAdvegas1?

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

of closing off Wuhan – a city of over 11,000,000 people – to stop the spread of COVID-19.

f. <u>January 24, 2020</u> – The United States Coast Guard issued a Maritime Safety Information Bulletin (MSIB) on January 24, 2020, the entitled *Novel Coronavirus Precautions*, directed to all vessel owner and operators[6]. The MSIB alerted shipowners and operators of the outbreak, provided guidance and mandated that they report sick or deceased crew/passengers to the Center for Disease Control (hereinafter the "CDC").

g. <u>January 24, 2020</u> – the Department of Transportation Maritime Administration (hereinafter "MARAD") issued a Maritime Security Communication with Industry (hereinafter "MSCI") advisory entitled *2020-002A-Global-Novel Coronavirus Outbreak*.[7]

h. <u>January 30, 2020</u> – WHO declared COVID-19 a "global health emergency" – recognizing that COVID-19 posed a risk beyond China. The U.S. Department of State issued a Level 4 (highest level) travel advisory as it related to U.S. citizens who planned to travel to China.[8]

i. <u>January 31, 2020</u> – MARAD issued another MSCI advisory entitled *2020-0004-Global-Novel Coronavirus Outbreak*[9] again alerting shipowners and operators, such as the Defendant PRINCESS, to coronavirus outbreak and reporting requirements to the CDC. MARAD issued a follow-up MSCI advisory on February 8, 2020 entitled *2020-0005-Global-Novel Coronavirus Outbreak*.[10]

j. <u>February 2, 2020</u> – China reports that the death toll from COVID-19 in mainland China (361) exceeded the death toll in mainland China from

---

[6]*See,*https://www.maritimedelriv.com/storage/app/media/Agencies/USCG/USCG_MSIB/USHQ_MSIB_01_20_MTS_Precautions.pdf

[7] *See,* https://www.maritime.dot.gov/content/2020-002a-global-novel-coronavirus-outbreak

[8] Ryan Goodman and Danielle Schulkin, *Timeline of the Coronavirus Pandemic and U.S. Response*, Just Security, April 13, 2020, https://www.justsecurity.org/69650/timeline-of-the-coronavirus-pandemic-and-u-s-response/.

[9] *See*, https://www.maritime.dot.gov/content/2020-004-global-novel-coronavirus-outbreak

[10] *See*, https://www.maritime.dot.gov/content/2020-005-global-novel-coronavirus-outbreak

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

the SARS outbreak in the early 2000s (349).

k.  February 3, 2020 – The United States Declares a Public Health Emergency.[11]

l.  February 5, 2020 – Chinese officials announced that nearly 500 people in mainland China have died as a result of COVID-19.

m.  February 5, 2020 (*Diamond Princess*) – Passengers aboard the *Diamond Princess* near Yokohama, Japan began a two-week quarantine after nine (9) passengers and one (1) crewmember tested positive for COVID-19 while aboard the vessel. See *infra* for further details.

n.  On February 13, 2020 – The CDC published the Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections. See *infra* for further details.

o.  February 21, 2020 (*Grand Princess*) – The *Grand Princess* embarks on a voyage despite its cruise operator, Princess, having knowledge that at least one of its passengers from a prior voyage who disembarked the *Grand Princess* on February 21, 2020 had symptoms of COVID-19 while aboard the vessel. See *infra* for further details.

p.  February 19-25, 2020 (*Diamond Princess*) – Following the two-week quarantine aboard the *Diamond Princess*, Japanese officials announced that of the 3,711 passengers aboard the vessel, over 700 tested positive for COVID-19 (18.8%) – the largest cluster of positive COVID-19 cases outside of mainland China at that time. See *infra* for further details.

q.  February 25, 2020 – Dr. Nancy Messonnier, Director of the CDC's

---

[11]*See*, https://www.google.com/search?sxsrf=ALeKk00ZRI5UcrchTw66d_8KafFXjk4ygA%3A1598026390832&source=hp&ei=lvI_X-KCMMjt5gLDyKGYCw&q=total+cases+of+covid+19+worldwide&oq=Total+cases+of+&gs_lcp=CgZwc3ktYWIQARgIMgIIADIICAAQsQMQgwEyAggAMgIIADIICAAQsQMQgwEyAggAMgUIABCxAzIICAAQsQMQgwEyCAgAELEDEIMBMgIIADoOCC4Q4QsQMQxwEQowIQkwI6BQguELEDOggILhDHARCvAVDWCVi4JGDZQmgAcAB4AIAB2QKIAckJkgEIMTAuMC4xLjGYAQCgAQGqAQdnd3Mtd2l6&sclient=psy-ab

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

National Center for Immunization and Respiratory Diseases announce that the COVID-19 is heading toward pandemic status.

r. <u>March 8, 2020</u> – Spain (a country which boarders France to the south) reported 589 COVID-19 cases and 17 COVID-19 related deaths.

s. <u>March 9, 2020</u> (*Grand Princess*) – The *Grand Princess* docked in Oakland, California and its passengers were held in quarantine. Of the 3,553 passengers onboard, 21 of the 46 first round of passengers tested for COVID-19 tested positive (45%). Many passengers ultimately refused COVID-19 testing so that they could disembark and travel to the safety of their homes quicker.

t. <u>March 12, 2020</u> – Spain reported over 3,000 COVID-19 cases and 84 COVID-19 related deaths.

u. <u>March 14, 2020</u> – Spain ordered a nation-wide lockdown, banning all intra-country travel except travel to procure food, medicine and travel related to essential business operations.

21.    The CDC's February 13, 2020, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections aboard ships, like the *Grand Princess*. *See* the Memorandums cited at footnote 1.

22.    In view of the fact that Dr. Grant Tarling, the Chief Medical Officer of Defendant's parent company Carnival Corporation, stated that Defendant has "deep partnerships with… the U.S. Centers for Disease Control and Prevention,"[12] Defendant knew and/or should have been aware of this Memorandum, including, but not limited to, the dangerous conditions and/or explosive contagiousness associated with COVID-19, and it's all but certain presence aboard the *Grand*

---

[12] This information was posted on PRINCESS' website in a video regarding Enhanced Boarding Procedures due to COVID-19 on February 29, 2020. *See* Princess Cruise Lines, Ltd., *Enhanced Boarding Procedures and Onboard Preventative Measures*, PRINCESS CRUISE LINES, LTD., February 29, 2020, https://www.princess.com/news/notices_and_advisories/notices/dr-grant-tarling-chief-medical-officer.html (last visited April 22, 2020).

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

*Princess* at that time.

23. This Memorandum provided cruise vessel operators, like Defendant, with numerous helpful considerations to assist in detecting and preventing the spread of COVID-19 amongst its crewmembers, passengers and its vessels at large, some of which include:

- "Early detection, prevention, and control of Coronavirus Disease 2019 (COVID-19) on ships **is important** to protect the health of travelers on ships and to avoid transmission of the virus by disembarking passengers and crew members who are suspected of having COVID-19";

- "Identifying and isolating passengers and crew with possible symptoms of COVID-19 as soon as possible **is needed** to minimize transmission of this virus";

- "To reduce spread of respiratory infections including COVID-19, CDC **recommends** that ships encourage crew members and passengers to

    ▪ Postpone travel when sick

    ▪ Watch their health

    ▪ Self-isolate and inform the onboard medical center immediately if they develop a fever (100.4$^{o}$F / 38$^{o}$C or higher), begin to feel feverish, or develop other signs or symptoms of sickness

    ▪ Use respiratory, cough, and hand hygiene

        - Advise passengers and crew of the importance of covering coughs and sneezes with a tissue. Dispose used tissues immediately in a disposable container (e.g., plastic bag) or a washable trash can.

        - Remind passengers and crew members to wash their hands often with soap and water, especially after coughing or sneezing. If soap and water are not available, they can use a hand sanitizer containing 60%-95% alcohol)"

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

10

Complaint

- "**Deny boarding of a passenger or crew member** who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation";

- "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 **should be** quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members **should** self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure";

- "**Isolate passengers or crew onboard** who are suspected of having COVID-19 infection in a single-occupancy cabin with the door closed until symptoms are improved."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

24.     According to Dr. Martin Cetron, the Director of the CDC's Division of Global Migration and Quarantine, cruise ships have a higher risk of infectious disease spread than arenas, theaters and restaurants.[13]

25.     Defendant and the cruise industry got an early warning of how easily the virus could spread on its massive ocean liners when the first cases emerged on the *Diamond Princess*, also owned and operated by Defendant, in early February 2020 in Yokohama Harbor.   The outbreak began with ten cases, and rapidly multiplied to seven hundred cases, as a result of the flawed two week quarantine on the ship.

26.     The Center for Disease Control (CDC) issued a statement on February 18, 2020 that "the rate of new reports of positives new cases on board [the *Diamond*

---

[13] Taylor Dolven, Sarah Blaskey, Nicholas Nehamas, and Alex Harris, *COVID CRUISES: Cruise Ships Sailed on Despite the Coronavirus. Thousands of People Paid the Price*, MIAMI HERALD, Apr. 23, 2020, https://www.miamiherald.com/news/business/tourism-cruises/article241640166.html (last visited April 23, 2020).

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

*Princess*], especially among those without symptoms**, highlights the high burden of infection on the ship and potential for ongoing risk**." Seven of the *Diamond Princess*' passengers died as a result of COVID-19.

27.     Defendant and the cruise industry got another warning of how severe the virus could spread on cruise ships when the *Grand Princess*, also owned by Defendant, had a breakout in late February 2020 off the coast of California. Princess had knowledge that at least one of its passengers from a prior voyage who disembarked February 21, 2020, had symptoms of coronavirus, and yet it made the conscious decision to proceed with the voyage that began on February 21, 2020, with another three thousand passengers on an infected ship. Prior to boarding the February 21, 2020 voyage on the *Grand Princess*, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, let alone examined in any capacity. As a result of PRINCESS' lackadaisical approach to the safety of passengers and crew, 103 passengers tested positive for the coronavirus and two people have died so far.

28.     Defendant's Chief Medical Officer Dr. Grant Tarling took to the media in late February 2020 to reassure crew and future passengers "we've learned from our recent experiences,' and the measures would in part 'enhance the cruising experience so it continues to be an exceptional and safe way to travel."[14]

29.     On February 29, 2020, in a videotaped message regarding COVID-19, posted on PRINCESS' website and its YouTube page, Dr. Tarling stated "in light of the global spread of coronavirus" Defendant have updated its boarding procedures onboard all its ships, including "temperature checks of all boarding guests," and "conducting thorough passport review and verification ensure guests have not

---

[14] Duncan McNab, *Coronavirus Australia: Explosive Developments in Ruby Princess Cruise Ship Saga*, 7NEWS, April 5, 2020, https://7news.com.au/lifestyle/health-wellbeing/coronavirus-australia-explosive-developments-in-ruby-princess-cruise-ship-saga-c-957325 (last visited April 22, 2020).

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

traveled within the past 14 days to countries where there is a travel restriction or health alert due to widespread coronavirus spread."[15]

30.    It would only stand to reason, that knowing of these prior traumatic outbreaks on another of its vessels less than a month prior to the subject voyage on the *Grand Princess*, that Defendant PRINCESS would have learned to take all necessary precautions to keep its passengers, crew and the general public safe.  This likely would have meant that the voyage, in its entirety, would have been cancelled. Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, Defendant PRINCESS set sail.

31.    For this reason and those further stated herein, Plaintiffs DIANE BOULAIS DALPHOND and PIERRE DUVAL contracted the coronavirus, were at actual risk of immediate physical injury and death, suffered from the symptoms and manifestations of COVID1-9, all of which was proximately caused by Defendant's negligence.

### Factual Allegations Surrounding the Coronavirus Outbreak on the *Grand Princess* Voyage

32.    On February 11, 2020, passengers embarked on the *Grand Princess* in San Francisco, California, to Mexico, which for sixty-two passengers would be a 25-night cruise with the *Grand Princess* returning to San Francisco, California on February 21, 2020.

33.    On or about February 19, 2020, PRINCESS became aware of at least one passenger showing symptoms of COVID-19 onboard the *Grand Princess*, but PRINCESS did not take any extra precautions.

34.    According to Grant Tarling, MD, MPH, the Chief Medical Officer of

---

[15] Jacquie McNish, Rebecca Smith, Erin Ailworth, and Rachel Pannett, *Cruise Ships Set Sail Knowing the Deadly Risk to Passengers and Crew*, WSJ, May 1, 2020, https://www.wsj.com/articles/cruise-ships-set-sail-knowing-the-deadly-risk-to-passengers-and-crew-11588346502 (last visited May 4, 2020).

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Carnival Corporation, PRINCESS's parent company, PRINCESS believed the infected passenger was already carrying the coronavirus when he boarded the *Grand Princess* on February 11, 2020.[16] Yet, PRINCESS had no adequate passenger and/or crewmember medical screening methods at the time of boarding despite their knowledge regarding COVID-19.

35.    On February 20, 2020, the infected passenger reported to the *Grand Princess* medical facility for medical treatment due to symptoms of the coronavirus according to Dr. Tarling. This passenger reported acute respiratory symptoms for about six to seven days before seeking treatment. Accordingly, this information would constitute a "hazardous condition" pursuant to 33 CFR § 160.216, and would have required PRINCESS to report this information pursuant to 42 CFR 71.1.

36.    On February 21, 2020, in the morning, the *Grand Princess* arrived back in San Francisco, California from its previous voyage. Within just a few hours, PRINCESS allowed new passengers, including the Plaintiffs, to board the ship without adequately sanitizing the *Grand Princess*, including, but not limited to, incorporating UV lights into the filtration systems and/or antimicrobial sanitizing equipment. In addition, PRINCESS did not have a third-party indoor environmental professional verify that common use areas and surfaces of the vessel were reasonably safe for passengers and/or crewmembers.

37.    Before boarding the *Grand Princess* on February 21, 2020, passengers, including the Plaintiffs, contacted PRINCESS over their concerns of the vessel's safety surrounding the coronavirus. PRINCESS assured passengers its vessel was not affected by the coronavirus, was safe, and that there was no need for concern. In addition, PRINCESS instructed passengers that they would *not* be reimbursed if they cancelled their February 21, 2020 voyage on the *Grand Princess*.

---

[16] Thomas Fuller, John Eligon, and Jenny Gross, The New York Times, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronaviruscruise-ship-oakland-grand-princess.html (last visited April 9, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

38.     Relying on PRINCESS' assurances, passengers, including the Plaintiffs, embarked on the *Grand Princess* on February 21, 2020 for a Hawaii cruise.

39.     Defendant did not inform passengers, including the Plaintiffs, that were scheduled to board the *Grand Princess* on February 21, 2020, that passengers from the prior voyage had symptoms of COVID-19 and/or inform passengers that other passengers aboard the *Grand Princess* had been exposed to and might be carrying COVID-19 and/or that passengers were at a significantly increased risk of exposure to COVID-19. If passengers, including the Plaintiffs, were made aware of this significantly increased risk of exposure prior to boarding the ship in San Francisco, California, Plaintiffs would have never boarded the *Grand Princess*, and/or never contracted COVID-19.

40.     Before boarding the *Grand Princess*, PRINCESS failed to deny boarding to passengers and/or crewmembers who showed symptoms of the coronavirus and/or travel history in China or other known exposure at the time of embarkation, including but not limited to, Japan, Italy, and South Korea. PRINCESS's actions and/or omissions were a direct violation of the CDC's Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019.

41.     During the boarding process on February 21, 2020, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, nor medically examined, including, but not limited to, temperature taken, before PRINCESS allowed passengers, including the Plaintiffs, onboard the *Grand Princess*. As a result, PRINCESS exposed passengers, including the Plaintiffs, to COVID-19 and/or to an actual risk of immediate physical injury and/or death.

42.     To make matters even worse, there were sixty-two passengers onboard the February 21, 2020 voyage on the *Grand Princess*, who were also on the prior

Complaint

voyage, that were exposed to the passengers on the prior voyage that tested positive for COVID-19. Of the sixty-two passengers, at least two of the passengers were showing symptoms of COVID-19 that PRINCESS was aware of.

43.    During the voyage, as should have been anticipated, a coronavirus outbreak occurred on the *Grand Princess*. The outbreak was considered so severe that the *Grand Princess* was denied entry to ports-of-call due to how contagious, novel, and deadly the coronavirus is.

44.    On February 25, 2020, PRINCESS sent emails to passengers who disembarked on the prior voyage on February 21, 2020, all while Plaintiffs and others similarly situated were onboard the *Grand Princess*, that these prior passengers may have been exposed to COVID-19 while on their *Grand Princess* cruise. However, PRINCESS did not inform all passengers, including the Plaintiffs, onboard the *Grand Princess* at the same time their potential exposure to COVID-19.

45.    On February 26, 2020, the *Grand Princess* docked in Nawiliwili, Hawaii, and sailed to other Hawaiian Islands until departing the Hawaiian Islands for Ensenada, Mexico on February 29, 2020.

46.    On March 3, 2020, the passenger on the prior voyage who visited the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19. This was confirmed and published by Place County Public Health on March 3, 2020. *See* CBS Sacramento, *Placer County Confirms Second Coronavirus Case, Declares Local Health Emergency*, CBS Local, March 3, 2020, https://sacramento.cbslocal.com/2020/03/03/placer-county-coronavirus-health-emergency/ (last visited April 13, 2020).

47.    However, PRINCESS waited until March 4, 2020, to inform passengers, including the Plaintiffs, their potential exposure to COVID-19 due to the prior passenger testing positive for COVID-19. Only the sixty-two passengers on the prior voyage on the *Grand Princess* were advised to quarantine in their cabin on

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

March 4, 2020. In addition, PRINCESS informed passengers, including the Plaintiffs, that the *Grand Princess* would no longer be sailing to the scheduled port-of-call of Ensenada, Mexico, and instead would return to San Francisco, California. Dr. Tarling issued the following letter to passengers:

**Guests Health Advisory – Coronavirus**
**March 4, 2020**

Dear Princess Guest:

I wish to advise you that today we have been notified by the United States Centers for Disease Control and Prevention (CDC) that they are investigating a small cluster of COVID-19 (coronavirus) cases in Northern California connected to our previous *Grand Princess* voyage that sailed roundtrip San Francisco from February 11 to February 21. We are working closely with our CDC partners and are following their recommendations.

**For those guests who sailed with us on our previous voyage and may have been exposed, in an abundance of caution, the CDC requires you to remain in your stateroom until you have been contacted and cleared by our medical staff. A member of our medical team will be calling you between the hours of 8:00 AM and 11:00 AM this morning. You may order room service while you wait for the medical screening to be completed, and we apologize for any inconvenience.**

Please be assured that the health, safety, and well-being of all guests and crew are our absolute priority. The CDC is continuing to actively collect information and has set up a meeting with us this morning to determine what, if any, actions need to be taken during this cruise and on arrival in San Francisco. We have shared essential travel and health data with the CDC to facilitate their standard notification to the State and County health authorities to follow up with individuals who may have been exposed to people who became ill.

As we anticipate that further review of the situation will be necessary on arrival in San Francisco, we will be cancelling the call to Ensenada on Thursday, March 5, in order to sail directly to San Francisco — exact date and time for arrival to be determined. We will keep you updated with information as we finalize plans. To assist you in contacting your family, we are providing free internet and phone service. We will advise you if the need arises to make changes to your onward travel plans post-cruise.

48.    On March 4, 2020, around 4:00 PM, California Governor Gavin Newsom declared a state of emergency due to the COVID-19 outbreak on the *Grand Princess* and due to the passengers on the prior voyage succumbing to the virus. In addition, Governor Newsom ordered that the *Grand Princess* would not be able to dock in San Francisco, and instead would be forced to stay off the coast of San Francisco, California.

49.    Later that afternoon on March 4, 2020, PRINCESS cancelled only a few large public congregations, such as, the events in the theater, but were allowed

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

unfettered access to the pools, gym, and buffets, which further put passengers, including the Plaintiffs, at an actual risk of exposure to coronavirus. Additionally, PRINCESS proceeded with the Formal Night where passengers are encouraged to socialize and gather. PRINCESS actions and/or omissions were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019, revised on February 18, 2020.

50.     In regards to managing passengers and crew after exposure, the CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019 states:

"Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 should be quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members should self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure."[17]

51.     Finally, on or about March 5, 2020, around 1:00 PM, the captain of the *Grand Princess* requested all passengers to remain isolated in their staterooms. PRINCESS decision came at least one day after PRINCESS was aware that the passenger on the prior voyage tested positive for COVID-19. PRINCESS' notice to passengers advising to quarantine in their staterooms is shown below:

---

[17] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

Complaint

March 5, 2020 10:00PM PT

**Grand Princess Update**

In collaboration with the U.S. Centers of Disease Control (CDC) and local authorities, samples were collected today from 45 people on Grand Princess (which includes a mix of guests and team members). The samples were delivered to the California Department of Public Health in Richmond for processing. The results of these tests are expected by tomorrow.

Princess Cruises can confirm there are 3,533 people currently onboard Grand Princess, including 2,422 guests and 1,111 teammates. In total, they represent 54 nationalities.

Following guidelines received today from the CDC, all guests have been asked to stay in their staterooms while test results are pending. Guests are receiving meal deliveries in their staterooms by room service, and additional television and movie options have been added to in-room programming. Guests have also been provided complimentary internet service to stay in contact with their family and loved ones, and the ship's internet bandwidth has been increased.

52.     After PRINCESS advised passengers to quarantine in their staterooms on or about March 5, 2020, crewmembers delivered food and beverages to passengers in their staterooms, but failed to wear any protective gear, including, but not limited to, masks and gloves, when interacting with passengers. As a result, PRINCESS exposed passengers, including the Plaintiffs, to COVID-19 and/or to an actual risk of immediate physical injury and/or death.

53.     On March 9, 2020, the *Grand Princess* was allowed entry in San Francisco, California, to allow for the disembarkation process of passengers. When passengers were instructed to leave their staterooms to meet at disembarkation areas aboard the vessel for further directions, PRINCESS did not direct passengers, including the Plaintiffs, to distance themselves from other passengers, which further put passengers at an actual, heightened risk of exposure to the coronavirus.

54.     As a result of PRINCESS's grossly negligent  approach to the safety of the passengers on board the *Grand Princess*, its passengers, including the Plaintiffs, and crew aboard the *Grand Princess* were at an actual risk of immediate physical injury and death.

55.     Consequently, the Plaintiffs, as well as thousands of passengers on the

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

*Grand Princess* were subjected to the risk of contracting the highly contagious coronavirus as a result of PRINCESS's failure to warn passengers at any time prior to boarding and/or while they were already onboard that there were other passengers with symptoms of the coronavirus, and PRINCESS's grossly negligent approach to the safety of the passengers.

56. As a result of PRINCESS's actions and/or omissions, Plaintiffs experienced symptoms of COVID-19, was exposed to an actual risk of physical injury and forced to quarantine for over two weeks, and feared for his life– all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise and/or implemented reasonable policies and procedures to prevent the spread of the highly contagious coronavirus.

57. As a result of Defendant's grossly negligent approach to the safety of the passengers on board the *Grand Princess*, and its failure to warn, Plaintiffs contracted COVID-19, experienced the symptoms of COVID-19, and required significant medical care.  Both Plaintiffs feared for their own lives and well as the life of each other,  all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise.

58. Defendant is fully aware of the impact this incident has had on passengers, including the Plaintiffs, as PRINCESS' President, Jan Swartz, sent an email to former passengers that sailed on the March 8, 2020 *Ruby Princess* cruise, offering counseling services to former passengers:

Complaint

**Care services**

Whether related to *Ruby Princess* or otherwise, the advent of the coronavirus has been a very difficult time for all involved and we want to support you as best we can. With this in mind, we would like to offer access to a counselling service. This is a standard courtesy service we provide to guests when circumstances warrant this.

If you would like to speak to a counsellor, we encourage you to contact our confidential counselling service:

USA & Canada: 877-841-1080
Other regions: +1 262 574 2528

You may also reach out to us via email at FamilyAssistance@HollandAmericaGroup.com (North America) or PCUK.Care@princesscruises.co.uk (UK) to be put in touch with our counselling service.

59.     As a result of having contracted COVID-19 aboard the *Grand Princess*, the Plaintiffs will continue to suffer and will require medical services in the future. They have and will suffer medical expenses as a result.

60.     Defendant's negligent misconduct was predicated on a profit motive because, simply put, cruise lines like Defendant make no money when passengers don't sail.   Defendant's knowing, intentional and reckless conduct subjects Defendant to the imposition of punitive damages.  This voyage set sail knowing it was a virtual certainty that there would be an outbreak, similar, if not identical, to those which PRINCESS' other vessel (*Diamond Princess*) had already very publicly faced.   This callous disregard for the safety and well-being of its passengers, including the Plaintiffs, must be answered for.

61.     Each and all of the foregoing conditions, including but not limited to, the actual risk of exposure to the coronavirus, were known to Defendant prior to the time the *Grand Princess* set for sail on the subject voyage. Defendant subjected passengers, including the Plaintiffs, to the highly contagious coronavirus, which the Plaintiffs contracted, exposing them to actual risk of immediate physical injury and death due to its (a) knowing and intentional decision to proceed with a 16-day cruise on February 21, 2020, knowing at least one of its passengers from the prior voyage

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers, including the Plaintiffs, at any time prior to boarding and/or while they were already onboard that there were   passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) knowing and intentional decision to wait one day to order passengers, including the Plaintiffs, to isolate in their staterooms after being informed that the passenger who presented to the *Grand Princess* medical facility with symptoms of the coronavirus on February 20, 2020, tested positive for COVID-19.

## COUNT I
## NEGLIGENCE AGAINST DEFENDANT

Plaintiffs hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 61, and alleges as follows:

62.    It was the duty of Defendant to provide Plaintiffs with reasonable care under the circumstances.

63.    Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

64.    Plaintiffs were injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

a.    Failure to use reasonable care to provide and maintain a safe voyage for passengers, including the Plaintiffs, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus, and when a prior passenger showed symptoms of the coronavirus, and care; and/or

b.    Failure to adequately warn passengers, including the Plaintiffs, before boarding the vessel that a passenger on a prior cruise showed symptoms of the coronavirus; and/or

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

c.   Failure to warn passengers, including the Plaintiffs, of the dangers and risks of the coronavirus and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

d.   Failure to adequately warn passengers, including the Plaintiffs, before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak onboard the *Grand Princess*; and/or

e.   Failure to adequately warn passengers, including the Plaintiffs, on the subject voyage aboard the *Grand Princess* that a passenger on a prior voyage who showed symptoms of the coronavirus tested positive for the coronavirus before boarding the vessel; and/or

f.   Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

g.   Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

h.   Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

i.   Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

j.   Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

k.   Failure to adequately quarantine passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting

23

symptoms of a virus and/or an infectious disease; and/or

l.    Failure to adequately quarantine passengers and/or crewmembers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

m.    Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

n.    Failure to serve uncontaminated food; and/or

o.    Failing to practice safe and sanitary food practices; and/or

p.    Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the *Grand Princess*; and/or

q.    Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on prior cruise voyages; and/or

r.    Failure to take adequate medical precautions when a passenger is exhibiting symptoms of the coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

s.    Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

t.    Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of the coronavirus and/or virus and/or infectious disease; and/or

u.    Failure to provide a sanitary vessel to prevent outbreaks of the coronavirus and/or virus and/or infectious diseases, including, but not

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

v.    Failure to take adequate steps to contain the spread of the coronavirus and/or virus and/or infectious diseases, which it knew or should have known could cause other dangerous medical conditions; and/or

w.    Knowingly refusing to cancel and/or offer refunds to passengers, including the Plaintiffs, as a result of a passenger on a prior cruise showing symptoms of coronavirus; and/or

x.    Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious coronavirus due to a passenger on a prior cruise showing symptoms of coronavirus; and/or

y.    Failing to cancel the voyage and/or offer refunds despite knowing a passenger on a prior voyage showed symptoms of the coronavirus and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

z.    Failure to reasonably offer refunds to passengers, including the Plaintiffs, not wishing to travel on a vessel that had a passenger from a previous voyage showing symptoms of the coronavirus; and/or

aa.    Exposing passengers, including the Plaintiffs, to unsanitary conditions that they were unprepared for without proper warning from Defendant; and/or

bb.    Failure to provide adequate training, instruction, and supervision to the Defendant employees; and/or

cc.    Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

Complaint

dd.  Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers, including the Plaintiffs, during an outbreak of a virus and/or infectious disease, including , but not limited to, the coronavirus; and/or

ee.  Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet, in common areas of the vessel; and/or

ff.  Knowing, as a result of previous similar incidents and/or passengers showing symptoms of the coronavirus, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

gg.  Failure to amend its cancellation policy to allow the passengers, including the Plaintiffs, to cancel their cruise without financial penalty in light of a passenger from a previous voyage showing symptoms of the coronavirus and/or the significant actual risk due to the coronavirus global pandemic;

hh.  Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

65.  The above acts and/or omissions caused and/or contributed to Plaintiffs contracting COVID-19 while aboard the *Grand Princess,* exposing them to medical complications arising from it and possible death, because the Plaintiffs would not have boarded the vessel knowing that a passenger on the prior voyage showed symptoms of the coronavirus that Defendant were aware of, which the Defendant

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

failed to adequately warned and/or communicated the foregoing to Plaintiffs.

66.    The above acts and/or omissions caused and/or contributed to the Plaintiffs contracting COVID-19 while aboard the *Grand Princess,* exposing them to medical complications arising from it and possible death,  because the outbreak would not have occurred but for Defendant's failure to adequately sanitize the vessel in a reasonably safe condition.

67.    At all material times, Defendant had exclusive custody and control of the vessel, *Grand Princess*.

68.    Defendant knew of the foregoing conditions causing passengers, including the Plaintiffs, to contract COVID-19 while aboard the *Grand Princess,* and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

69.    As a result of the negligence of Defendant, Plaintiffs were:

a.    exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of contracting and actually contracting COVID-19 while aboard the *Grand Princess*, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties, loss of taste and smell and hair loss; and/or

b.    contracted COVID-19 while aboard the *Grand Princess,* suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

27

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future; and/or

c.     feared for their own lives as well as the lives of each other, as a result of contracting COVID-19 aboard the *Grand Princess*.

WHEREFORE the Plaintiffs DIANE BOULAIS DALPHOND and PIERRE DUVAL demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT

Plaintiffs hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 61, and alleges as follows:

70.     At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm and contracted COVID-19 while aboard the *Grand Princess*.

71.     Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety as a result of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

Complaint

72.   Plaintiffs were forced to remain on a vessel that had multiple passengers that tested positive of coronavirus and were on the vessel for multiple days, and were then forced to disembark the vessel in tight groups, without adequate personal protective equipment, including masks and gloves, creating an actual risk of exposure to and actually contracting COVID-19, causing a reasonable fear of great bodily harm and death. At all times material, the Plaintiffs were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the highly contagious coronavirus, which had no vaccine.

73.   Plaintiffs were placed in the zone of danger as a result of Defendant's dangerously lackadaisical approach in dealing with the coronavirus that was known to be on board the vessel via passengers on a prior voyage that tested positive for the coronavirus.   Plaintiffs were in close proximity to conditions which did caused serious physical, mental, emotional injury and/or illness.

74.   Plaintiffs, fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Defendant. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

75.   As a result of the negligent inflection of emotional distress by Defendant, Plaintiffs were:

a.   exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of contracting and actually contracting COVID-19 while aboard the *Grand Princess*, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Complaint

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.　contracted COVID-19 while aboard the *Grand Princess,* suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future; and/or

c.　feared for their own lives as well as the life of their spouse, as a result of contracting COVID-19 aboard the *Grand Princess*.

WHEREFORE the Plaintiffs DIANE BOULAIS DALPHOND and PIERRE DUVAL demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## **Prayer for Relief**

WHEREFORE, the Plaintiffs DIANE BOULAIS DALPHOND and PIERRE DUVAL respectfully request the Court enter judgment in their favor and against the Defendant as follow:

1.　To enter judgment in favor of the Plaintiffs against Defendant on all causes of action as alleged herein;

2.　To award compensatory damages in the amount to be ascertained at

Complaint

trial;

3.    To award punitive damages, as permitted by law;

4.    To award costs of suit, as permitted by law;

5.    For prejudgment interest according to proof; and

6.    To enter such other and further relief as the Court deems just under the circumstances.

LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.

DATED:   February 1st, 2021.

BY: *s/ Carol L. Finklehoffe*
CAROL L. FINKLEHOFFE
*Attorney for Plaintiffs*

## Demand for Jury Trial

Plaintiffs hereby demands a trial by jury on all claims for relief.

DATED:   February 1st, 2021.

LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.

BY: *s/ Carol L. Finklehoffe*
CAROL L. FINKLEHOFFE
*Attorney for Plaintiffs*

Complaint